LAW OFFICE OF FRANCIS J. FLYNN, JR.
Francis J. Flynn, Jr.
6220 W. Third Street, #115
Los Angeles, California 90036
T: 314-662-2836
F: 1-855-710-7706
E: casey@lawofficeflynn.com

*Attorneys for Plaintiff and the Proposed Classes*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| GRACE BLANCAS, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> MINING MAX, LLC, NAM HO PARK a/k/a DANIEL PARK, AND DOES 1 THROUGH 28, <br><br> Defendants. | Case No.:  2:18-cv-4557 <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> (1) **VIOLATIONS OF THE FEDERAL SECURITIES ACT, (15 U.S.C. § 77e(a) & e(c));** <br> (2) **VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, *ET SEQ.*** <br> (3) **FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500, *ET SEQ.*** <br> (4) **BREACH OF CONTRACT;** <br> (5) **FRAUD BY CONCEALMENT;** |

)
)   **(6) ASSUMPSIT, UNJUST**
)       **ENRICHMENT AND/OR**
)       **QUASI-CONTRACT**
)   **(7) VIOLATIONS OF**
)       **CALIFORNIA**
)       **SECURITIES LAW OF 1968**
)       **(CAL. CORP. CODE §**
)       **25000, et seq.)**
)   **(8) CALIFORNIA LEGAL**
)       **REMEDIES ACT**
)       **CALIFORNIA CIVIL CODE**
)       **§ 1750, ET SEQ.**
)
)   **JURY TRIAL DEMANDED**

Plaintiff, Grace Blancas ("Plaintiff"), tenders the following as her Complaint and Jury Demand against Defendants Mining Max, LLC, Nam Ho Park a/k/a Daniel Park, and DOES 1 through 28 (collectively, "Mining Max" or "Defendants") on behalf of herself and others similarly situated ("Class"), for financial losses suffered from an online investment scam.

## I.   INTRODUCTION

1.   Defendants scammed hundreds of Californians and thousands of Americans out of millions of dollars through an online scam called Mining Max.

2.   Defendants took advantage of the increased attention, interest and success of cryptocurrencies, legitimate companies and technology to convince Plaintiff and the Class that they would make money by investing in Mining Max and "mining" a highly profitable and well-known cryptocurrency, Ethereum.

3.   Defendants relied upon, communicated with and otherwise benefited from "investors." These investors engaged in "direct sales" with others, marketed

2

Mining Max, and convinced people to purchase "mining rigs" from Mining Max for a price of approximately $3,200.

4.     Mining Max was both a pyramid scheme and a Ponzi scheme. That is, it relied on new money from new users, who were in turn expected to get more new users to produce more new money, while not actually engaging in any real activity that would produce income, profits or benefit to investors.

5.     In its scheme, Mining Max marketed "mining rigs" to its consumers, like Plaintiff. It advertised that the "mining rigs," which were computer-like machines, would produce cashable, sellable, tradable cryptocurrency.

6.     The consumer did not ever see his or her "mining rig," because those machines were supposedly stored and "operated" in a facility in South Korea. Consumers received a "Certificate of Purchase," which would be good for two years before the consumer would have the option to purchase a new "mining rig."

7.     Mining Max promised a return of $800 to $1,200 per month per machine based on the current rate of growth, explaining that you "make your money back within 3-4 months" so you can reap profits for the next 20 months.

8.     To keep the new purchases of "mining rigs" coming, Mining Max promoted an "investment" platform and showered its top investors with money and gifts for recruiting new customers. Ultimately, when the mining activities of Mining Max failed to yield the promised returns, Mining Max halted its operation, took all of Plaintiff and the Class's money, and left them with nothing.

3

COMPLAINT
Case No.:

9.     It was reported in December 2017, that South Korean authorities launched a large-scale investigation into the operations of Mining Max and, as a result, arrested twenty-one individuals associated with Mining Max in South Korea. Several other individuals are wanted in South Korea but have apparently fled the county.  Amongst those to flee South Korea is Defendant, Nam Ho Park a/k/a Daniel Park.

10.     Plaintiff and the Class were damaged, and Mining Max has profited handsomely at the expense of Plaintiff and the Class.

11.     Plaintiff seeks monetary damages for these losses, in an amount to be determined at trial.

12.     Plaintiff also seeks injunctive relief, in the form of: (1) specific enforcement and/or rescission of the contract between Mining Max and Plaintiff and the Class; (2) a return of all money and/or cryptocurrencies given to Mining Max by Plaintiff and the Class; (3) disgorgement of all monies earned by Defendants due to their conduct; and/or (4) an immediate order enjoining Mining Max and its owners, members and Board of Directors from transferring, selling, spending or otherwise dissipating any assets so that Plaintiff and the Class can recover the money owed to them.

## II.     JURISDICTION & VENUE

13.     This Court has jurisdiction pursuant to 28 U.S.C. §1331 because this lawsuit brings a claim under 15 U.S.C. § 77e(a) & e(c).

4

14.     This Court also has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and Defendant and at least one member of the Plaintiff class are citizens of different states.

15.     This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

16.     This Court has jurisdiction over the Defendants because the injuries occurred in this District. The specific actions of the Defendants purposefully, knowingly, and intentionally reached this District.  Mining Max operated a website and allowed Plaintiff and the Class to purchase its products with their California addresses. Moreover, Defendant, Mining Max, LLC, filed its Articles of Organization in California and maintains headquarters in its California at 3600 Wilshire Boulevard, Suite 1200, Los Angeles, CA 90010. It directed payments for its "mining rigs" to its Los Angeles address.

17.     Venue is proper in the Central District of California under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff resides in this District, viewed Defendants' representations and misrepresentations in this District, engaged in commerce with Defendants from her computer in this District, and otherwise specifically performed

COMPLAINT
Case No.:

her end of the bargain in this District. Additionally, this District is where Defendant, Mining Max, LLC, is located.

## III.   PARTIES

18.   Plaintiff Grace Blancas is an individual domiciled in Los Angeles County, California, within this District.

19.   Defendant Mining Max LLC is a limited liability company organized under the laws of California, doing business worldwide through the website miningmax.net. Mining Max has a principal place of business of 3600 Wilshire Boulevard, Suite 1200, Los Angeles, CA 90010. The registered agent for service of process for Mining Max is Jin Ho Lee, who can be served at 3600 Wilshire Boulevard, Suite 1210, Los Angeles, CA 90010.

20.   Defendant Nam Ho Park a/k/a Daniel Park ("Mr. Park") has been identified as the CEO and founder of Mining Max. At this time, Mr. Park cannot be found. According to reports from South Korea, he is wanted by the South Korean government and is believed to have fled the country.

21.   Upon information and belief, at least twenty-one individuals have been arrested as it relates to the Mining Max scam described herein. Because those individuals were arrested in South Korea, Plaintiff has been unable to obtain to the reports identifying those people intimately involved with the Mining Max scam.

COMPLAINT
Case No.:

22.    In addition, upon information and belief, seven additional individuals have been placed on a wanted list for their wrongful conduct relating to Mining Max, but could not be arrested because they could not be found.

23.    Accordingly, the true names and capacities, whether individual, corporate, partnership, associate, or otherwise, of the Defendants named herein as DOES 1 through 28, inclusive, are presently unknown to Plaintiff.  For this reason, Plaintiff sues these Defendants by fictitious names.  Plaintiff will seek leave to amend this Complaint to add their true names and capacities as soon as they are ascertained. Plaintiff further alleges, on information and belief, that each of these fictitiously named Defendants is responsible for the acts alleged herein.

## IV.    GENERAL FACTUAL ALLEGATIONS

24.    A blockchain is a distributed record of transactions, usually managed by a peer-to-peer network of computers that validates the transactions.

25.    Although complicated, mining for cryptocurrency is the common name for the process of solving mathematical equations that add "blocks" or solved transactions to the blockchain.  Miners solve these mathematical equations with computer software that essentially guess at the very complicated mathematical problem until it is solved. Once a mathematical equation is solved: (1) the block is added to the blockchain; (2) the miner who solved the equation is rewarded with cryptocurrency; and (3) the other miners move on to the next unsolved block to

solve. Each cryptocurrency only has a finite amount of cryptocurrency to mine, so like the Gold Rush, there is a perceived need to mine as much as possible now.

26.     Bitcoin, a digital currency, is the most well-known type of blockchain and became synonymous with blockchain technology in the public consciousness in 2017 thanks to the huge spike in Bitcoin's price. Bitcoin began 2017 at around $1,000 per coin, and reached highs of above $19,000 in early December, before falling to approximately $9,000 in late April 2018.

27.     Alongside Bitcoin, other blockchain "coins" had huge increases in 2017. For instance, Ethereum, another blockchain, had its coin, ETH, priced at around $8 on January 1, 2017, and ended 2017 at around $721 representing a growth of approximately 9000%.

28.     Bitcoin, ETH and all cryptocurrency coins are volatile, unstable, subject to the whims of investors worldwide, and undergo huge price swings on a daily basis and across various different exchanges. Cryptocurrency is inherently volatile.

29.     Against this backdrop, Mining Max created a program that promised substantial returns that benefited from mining Ethereum, the most profitable cryptocurrency in June 2016 when Mining Max allegedly chose the currency it would mine.

COMPLAINT
Case No.:

30.    Mining Max offered to its customers the opportunity to purchase a "mining rig," which is the computer-like machine that would be used to mine for Ethereum.

31.    On its website, Mining Max promoted the "mining rig" as a machine it began building in 2015 with its "talented team." Mining Max debuted "the MM ALT-401 in October of 2016," which "utilizes 4 GPUs (Graphic Processing Unit) allowing Ethereum to be mined along with several other alt-coins."

32.    The "mining rig" cost $3,200, but customers never saw the machine. Instead, the customer would pay $3,200 to Mining Max, and Mining Max would issue a "Certificate of Purchase" that would be effective for a two-year period. According to miningmax.net, "[a]ll of the mining rigs are assembled and maintained in our Internet Data Centers (IDC) in Korea," and "[p]ersonal visitations are not allowed."

33.    Mining Max promised that the "mining rig" would be installed within 10-40 business days after purchase.

34.    In its promotional videos, Mining Max explained that, of the profits generated from mining Ethereum, the customer would earn 60% of the profits and the other 40% would go to Mining Max for administrative costs and to investors in Mining Max.  Based on the current rate of growth, Mining Max advertised that customers, like Plaintiff, should expect to generate between $800-$1,200 per month from each "mining rig."

9

35.     In addition to selling this product, Mining Max promoted a pyramid scheme by which people were encouraged to promote and sell "mining rigs" to earn "bonuses."  As investors recruited others to buy "mining rigs," investors formed a pyramid with a team on your left and on your right.

36.     Investors could earn a "sales bonus" and a "mining bonus."



37.     Investors received a Direct Sales Bonus if the investor convinced another person to purchase a "mining rig" for $3,200.  Mining Max would pay the user a $200 referral bonus for each mining machine sold.

38.     The Group Sales Bonus promised investors $140 for each machine someone on his or her "team" sold. Depending on how many machines the investor had purchased, he or she could earn up to $10,000 per day.

39.     Mining Max also offered a Matching Bonus, which Mini that the investor would receive 5% of the Group Sales Bonus earned by his or her direct

10

referral team.   Depending on how many machines the investor had bought, the investor would be paid a 5% bonus further up the pyramid.



40.    Mining Max also had three types of "mining bonuses."

41.    The Smart Mining Bonus promised that each investor would earn 60% of the Ethereum his or her "mining rig" produced.

42.    The Group Mining Bonus offered investors earnings of 7% of the Ethereum "mined" by the "mining rigs" of those who are below the investor in the pyramid, up to 20 levels.   To participate in this bonus, the investor must have purchased at least three "mining rigs."

43.    The STAR Sharing Bonus promised investors up to 3% of the Monthly Total Mining Output based on his or her STAR level.   An investor's STAR level is

COMPLAINT
Case No.:

determined by how many machines the investor had purchased combined with how many direct sales had been made by the investor and his or her team.

44.   On or about December 20, 2017, Prosecutors in South Korea issued indictments for at least twenty-one (21) individuals associated with Mining Max, LLC on charges of fraud relating to the above-referenced scam. Seven (7) others are wanted for the same charges but could not be found in Korea.

45.   Korean prosecutors estimated that the scam impacted more than 15,000 consumers, including 2,600 consumers in the United States.

46.   According to the Korean investigation, Mining Max failed to use its revenue for its mining and was merely running a Ponzi scheme and a pyramid scheme.

47.   Although Mining Max's representations about returns on investments appeared too good to be true for most investments, the promised returns were in line with the rise of cryptocurrency trading and investing in 2017 and, therefore, were believable, making it reasonable for Plaintiff and the Class to rely upon and believe these representations.

48.   Mining Max lured in new investors by encouraging investors to engage in direct sales, which would allow investors to develop a pyramid below them from which they could reap additional returns.

COMPLAINT
Case No.:

49.    Investors believed in the reality of this scam because the person who marketed the direct sale would pledge his or her success with Mining Max and claimed to be personally invested in and profiting from Mining Max.

50.    Plaintiff and Class would have expected to profit from the efforts of Mining Max and its agents.

51.    Plaintiff and Class would have believed, based on Mining Max's statements in its promotional materials, that investors could profit by buying "mining rigs" and encouraging others to do the same.

52.    Mining Max represented to Plaintiff and the Class that they could expect significant and consistent returns by investing with Mining Max.

53.    Based on the conduct described above, Plaintiff and the class reasonably expected that they would profit solely from Mining Max.

54.    On December 19, 2017, Mining Max LLC filed a Certificate of Cancellation with the California Secretary of State, thereby attempting to dissolve its seven-month-old limited liability company.

55.    Then, on or about December 20, 2017, Plaintiff and the Class learned that Mining Max was being investigated by the South Korean government and began to see a disclaimer on the Mining Max website that insinuated that the business would be shut down during the investigation:

COMPLAINT
Case No.:



56.     Since that time, Plaintiff and the Class have been left with accounts that reflect a $0 balance.

57.     Mining Max investments are "securities" as defined in Cal. Corp. Code § 25019.

58.     Mining Max unlawfully offered and sold unregistered securities in California in violation of Cal. Corp. Code § 25110.

59.     Further, in violation of Cal. Corp. Code § 25210, Mining Max unlawfully transacted business with individuals in California as a broker-dealer without registering as a "broker-dealer."

60.     Cal. Corp. Code § 25400, *et seq.*, prohibits a wide-range of fraudulent and unfair practices in connection with the offer or sale of any security, whether offered or sold indirectly or directly.

61.     Defendants violated Cal. Corp. Code § 25400, *et seq.*, when, in connection with the offer or sale of a security to Plaintiff and the Class, employed

COMPLAINT
Case No.:

a scheme to defraud Plaintiff and the Class, made untrue and misleading statements of material facts, and engaged in a practice and course of business which operated as a fraud on Plaintiff and the Class.

62.   Mining Max intentionally misled Plaintiff and the Class, and intentionally withheld material facts about Mining Max from Plaintiff and the Class, including, but not limited to, the following:

a. The identity of the principals of Mining Max and the true location of Mining Max's operations and management;

b. Information about the assets and liabilities of Mining Max and any other information that indicates the means by which Mining Max will provide investors with a daily return, regardless of the value of Ethereum;

c. Information about the mining of Ethereum, including historical performance, proof of its existence, and the risk factors associated with the practice;

d. That Mining Max investments were securities and are not registered with the any governing regulator;

e. That only registered dealers or agents can be paid commissions for referrals or sales of securities; and

COMPLAINT
Case No.:

f. That affiliates who receive such commissions for their sale of Mining Max investments without being properly registered are in violation of the Securities Act of 1933.

63. In addition, Mining Max had token language about investment risks on its materials. In tiny print on its promotional materials, Mining Max noted "Income Disclosure: It is important to understand that any figures used in the following slides do not necessarily represent the income you will earn and are for illustration purposes only. They must be not considered as a guarantee, nor a projection of your actual earning or profit potential. Your success with Mining Max results from successful sales efforts, hard work, leadership, and dedication."

## V. FACTUAL ALLEGATIONS RELATING TO PLAINTFF

64. After researching various cryptocurrency vehicles, Plaintiff learned about Mining Max from another user named "Mike" on or around June 2017. At that time, "Mike" informed Plaintiff about Mining Max and advised her that he would get a referral bonus if Plaintiff bought a "mining rig."

65. "Mike" sent Plaintiff Mining Max videos appearing on YouTube touting the large returns mining Ethereum through a Mining Max "mining rig" would return. In emails to Plaintiff, "Mike" stated "Ethereum hit a new high every day for the last three days! Today it hit over $326!! So our machines can make even more $$$." Exh. A. In another email, "Mike" stated Ethereum just hit $341! At that

COMPLAINT
Case No.:

price our machine can make $1125/month instead of $900! I think it will continue to go up." Exh. B.

66.    In reliance on the representations made on Mining Max's website and the communications sent by "Mike" and produced by Mining Max, Plaintiff sent a check for $3,200 to the Mining Max office in Beverly Hills, California in order to purchase a "mining rig."

67.    Mining Max cashed her check, created an "account" for Plaintiff, and advised her that she could check her account on the Mining Max website to monitor her account.

68.    However, Plaintiff never saw a balance in her account. This is not surprising considering the information obtained by Korean authorities revealed Mining Max to be a scam. At the same time, Mining Max provided several excuses as to why the operation was not producing any results. In an email sent to Plaintiff and Class members in November 2017, Mining Max represented that its mining data had been compromised and was therefore suspending mining activities for undetermined period of time. Exh. C. In an email sent to Plaintiff and Class members in December 2017, Mining Max represented that it was "undergoing a restructuring stage due to a breach of mining data, and therefore, all activities, including commission payout, coin transfers, and supplemental fees will be suspended until February 2018." Exh. D. Further, this email stated that "as for your

COMPLAINT
Case No.:

coins in your Dashboard office, you will not be able to receive them until February 1st, 2018." *Id.* These statements have proven to be untrue.

69.     Since late 2017, despite her best efforts, Plaintiff has been unable to reach any representative for Mining Max or "Mike" regarding her investment.

70.     In sum, Mining Max stole Plaintiff's money and disappeared.

71.     Had Plaintiff been provided information as to the true nature of Mining Max's operation, she would not have invested in a Mining Max "mining rig."

## VI.    CLASS ACTION ALLEGATIONS

72.     Plaintiff brings this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their behalf and on behalf of the following Class and Subclass:

**The Nationwide Class (the "Class")**

All United States residents who invested money in the Mining Max investment program between May 30, 2017 and December 19, 2017, through the transfer of currency to Mining Max.

**The California Subclass**

All California residents who invested money in the Mining Max investment program between May 30, 2017 and December 19, 2017, through the transfer of currency to Mining Max.

73.     Excluded from the National Class and California Subclass (collectively the "Classes") are Defendants and their subsidiaries; all persons who make a timely election to be excluded from the Classes; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiff

18

COMPLAINT
Case No.:

reserves the right to revise the Class definitions based upon information learned through discovery.

74. The claims of all Class members derive directly from a single course of conduct by the Defendants. Defendants have and continue to engage in uniform and standardized conduct toward the Class members. Defendants do not differentiate, in degree of care or candor, in their actions or inactions, or the content of their statements or omissions, among individual Class members. Accordingly, Plaintiff brings this lawsuit as a class action on her own behalf and on behalf of all other persons similarly situated pursuant to Fed. R. Civ. P. 23(a) and (b)(3) and/or (b)(2) and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these provisions.

75. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

76. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

77. **Numerosity.** This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). Plaintiff is informed and believes that thousands of individuals within the United States have invested in Mining Max. Individual joinder of all Class members is impracticable.

19

78.     Each of the Classes is ascertainable because its members can be readily identified using sales records, contracts, and other information kept by Defendants in the usual course of business and within their control. Plaintiff anticipates providing appropriate notice to the Classes, in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

79.     **Commonality and Predominance.** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members as is required by Fed. R. Civ. P. 23(a)(2). These common questions include, but are not limited to, the following:

a.   Whether Defendants engaged in the conduct alleged herein;

b.   Whether Defendants violated federal and/or state securities law;

c.   Whether Defendants violated the Section 5 of the FTC;

d.   Whether Defendants violated state laws as set forth herein;

e.   Whether Defendants' representations about Mining Max were false, misleading, fraudulent other otherwise untrue;

f.   Whether the Mining Max mining program was an investment;

g.   Whether Mining Max and Plaintiff and the Class entered into an investment contract based on the promises of Mining Max;

h.   Whether the Defendants misrepresented the risks of Mining Max;

COMPLAINT
Case No.:

i.   Whether Mining Max knowingly and intentionally operated a Ponzi scheme and/or pyramid scheme;

j.   Whether Defendants are liable to the Class for damages and/or penalties, as a result of their own knowledge, conduct, action, or inaction, and if so, in what amount; and

k.   Whether Plaintiff and the other Class members are entitled to equitable relief, including but not limited to restitution or a preliminary and/or permanent injunction.

80.   **Typicality.** Plaintiff's claims are typical of the claims of the Classes as required by Fed. R. Civ. P. 23(a)(3), because, among other things, Plaintiff and all Class members were comparably injured through Defendants' wrongful conduct as described above.

81.   **Adequacy.** Plaintiff is an adequate class representative because her interests do not conflict with the interests of the members of the Classes she seeks to represent.  Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. The interests of the members of Classes will be fairly and adequately protected by Plaintiff and her counsel.  As such, Plaintiff meets the requirements of Fed. R. Civ. P. 23(a)(4).

82.   **Declaratory and Injunctive Relief.** Fed. R. Civ. P. 23(b)(2): Defendants have acted or refused to act on grounds generally applicable to Plaintiff

21

and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Classes as a whole.

83.   **Superiority.** The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each member of the Class, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible. Even if members of the Classes themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

84.   In the alternative, the Classes may be certified because:

a.  The prosecution of separate actions by the individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes;

b.  The prosecution of separate actions by individual members of the Classes would create varying standards of conduct required of the Defendants;

COMPLAINT
Case No.:

c. The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

d. Defendants have acted, or refused to act on, grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

## VII.   CAUSES OF ACTION

### COUNT I

### VIOLATIONS OF THE FEDERAL SECURITIES ACT

### (15 U.S.C. § 77e(a) & e(c))

### (On Behalf of the Nationwide Class)

85.   Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

86.   Defendants violated federal securities laws through their use of websites and transactions in interstate commerce as described in detail above.

87.   Defendants are each a "seller" under 15 U.S.C. § 77e because it and/or its agents solicited investments from Plaintiff and the Class.

23

88.    The money or other things of value paid by Plaintiff and the Class were pooled by Mining Max so that it could profit for itself at the expense of investors such as Plaintiff and the Class.  As a result, Plaintiff and the Class, shared in the risks and benefits of the investments.

89.    Plaintiff and the Class were reliant on and depended on the expertise of Defendants for their investment returns.

90.    Plaintiff and the Class reasonably expected to receive profits from their investments with and through Defendants.

91.    Mining Max's pyramid scheme creates investment contracts, subject to federal securities laws, and therefore, Defendants were required to register such investments as such.

92.    However, Defendants failed to register those investments with the Securities and Exchange Commission ("SEC") or any federal agency.

93.    Defendants' conduct violates 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a) & e(c).

94.    Because of Defendants' unregistered sales of securities, Plaintiff and the Class suffered damages as described above.

## COUNT II

## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW

### (California Business & Professions Code §§ 17200, *et seq.*)

### (On Behalf of the Nationwide Class)

95.   Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

96.   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business act or practice. The Act also provides for injunctive relief, restitution, and disgorgement of profits for violations.

97.   Defendants' unlawful, unfair, and/or fraudulent business acts and practices, as described herein, were and are in violation of the UCL. Defendants' conduct violates the UCL in the following ways:

  a.  By knowingly and intentionally concealing from Plaintiff and the other members of the Classes material information concerning the true nature of Mining Max's operation;

  b.  By violating other California laws, including Cal. Bus. & Prof. Code § 17500, *et seq.*, and Cal. Corp. Code § 25000, *et seq.* (described below); and

  c.  By violating federal statutes, including 15 U.S.C. § 77e(a) & e(c) and  Section 5 of the Federal Trade Commission Act, 5 USC §45.

98.   Defendants' omissions alleged herein caused Plaintiff and the other Class members to invest in Mining Max.  Had they been aware of the information omitted by Defendants, Plaintiff and the other Class members would not have invested in Mining Max.

99.     Defendants' practice is also immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweigh its benefits.

100.    Accordingly, Plaintiff and the Class members have suffered injury in fact, including lost money or property as a result of Defendants' unlawful, unfair, and fraudulent business acts.

101.    Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendants, under Cal. Bus. & Prof. Code § 17200.

102.    Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the Class members any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief set forth below.

**COUNT III**

**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW**

**(California Business & Professions Code §§ 17500, *et seq.*)**

**(On Behalf of the Nationwide Class)**

103.    Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

104.    Cal. Bus. & Prof. Code § 17500 provides:

COMPLAINT
Case No.:

> It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise,. . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

105.   Defendants caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements, including statements included in its general advertising and on its website, that omitted material information from consumers and members of the Classes. Defendants knew or should have known through the exercise of reasonable care that the omitted information was material to consumers, including Plaintiff and the other Class members.

106.   Defendants have violated Cal. Bus. & Prof. Code § 17500 because their omissions regarding Mining Max were material and likely to deceive a reasonable consumer.

107.   Plaintiff and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. By investing in Mining Max, Plaintiff and the other Class members relied on the representations by Defendants from which Defendants

27

COMPLAINT
Case No.:

omitted material information.   Had Plaintiff and the other Class members been aware of the omitted information, they would not have invested in Mining Max. Plaintiff and other Class members bestowed a benefit upon Defendants but did not receive the benefit of their bargain.

108.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

109.   Plaintiff, individually and on behalf of the other Class members, requests that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the other Class members any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## COUNT IV

## BREACH OF CONTRACT

### (On Behalf of the Nationwide Class)

110.   Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

COMPLAINT
Case No.:

111.   The terms of the transaction between Plaintiff and Defendants and the Classes and Defendants are a contract under which Defendants would pay returns, plus bonus returns, depending on users' level of investment.

112.   The terms of the contract were clear, unambiguous, not subject to any other interpretation other than that Plaintiff would receive the benefit of the bargain.

113.   Defendants have breached the contract by not paying returns, plus bonus returns as set forth in the terms of the contract.

114.   Defendants further breached the contract by not investing Plaintiff's money and instead stealing Plaintiff's money invested and failing to pay any return on Plaintiff's investment.

115.   Said differently, Defendants unilaterally converted Plaintiff's money.

116.   Plaintiff and the Class members are entitled to damages from the breach of contract as alleged above, including, but not limited to, return of principal, interest, attorneys' fees and other foreseeable damages from the total loss of this investment.

## COUNT V

## FRAUD BY CONCEALMENT

### (On Behalf of the Nationwide Class)

117.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

COMPLAINT
Case No.:

118.   Defendants intentionally concealed and suppressed material facts concerning the true nature of the investment as described in detail above.

119.   Plaintiff and the Class reasonably relied upon Defendants' false representations.

120.   Defendants' false representations were material to Plaintiff because it went to the heart of the bargain, an easy return on investment in the volatile and complicated cryptocurrency market.

121.   Defendants had a duty to disclose the scheme they were engaged in because they had exclusive knowledge as to implementation and maintenance of their scheme, and because they knew facts not known to or reasonably discoverable by Plaintiff or the Class.

122.   Defendants actively concealed and/or suppressed these material facts as described above, in whole or in part, to pad and protect its profits and to avoid scrutiny over its claimed investment returns.

123.   Because of the concealment and/or suppression of the facts, Plaintiff and the Class have sustained damages as outlined above.  Accordingly, Defendants are liable to Plaintiff and the Class for damages in an amount to be proven at trial.

124.   Defendants' actions were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiff and the Class, and the conduct as alleged warrants an assessment of

COMPLAINT
Case No.:

punitive damages in an amount sufficient to deter such conduct in the future, which is to be determined according to the proof.

## COUNT VI

## ASSUMPSIT, UNJUST ENRICHMENT AND/OR QUASI-CONTRACT

### (On Behalf of the Nationwide Class)

125.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

126.   As Plaintiff and the Classes show just grounds for recovering money paid for benefits Defendants received from them, either directly or indirectly, and they have a right to restitution at law through an action derived from the common-law writ of assumpsit by implying a contract at law based on principles of restitution and unjust enrichment, or though quasi-contract.

127.   Defendants, having received such benefits, are required to make restitution. The circumstances here are such that, as between the two, it is unjust for Defendants to retain such benefits based on the conduct described above. Such money or property belongs in good conscience to the Plaintiff and Class members and can be traced to funds or property in Defendants' possession. Plaintiff and the Class members have unjustly enriched Defendants through payments and the resulting profits enjoyed by Defendants as a direct result of such payments. Plaintiff's detriment and Defendants' enrichment were related to and flowed from the conduct challenged in this Complaint.

31

128.   By virtue of the Plaintiff's and the Class members' investments, Defendants alternatively entered into a series of implied-at-law or quasi-contracts that resulted in money being paid and received by Defendants, either directly or indirectly, at the expense of Plaintiff and Class members under agreements in assumpsit. Plaintiff and other Class members conferred a benefit upon Defendants by investing in Mining Max. Defendants had knowledge of the general receipt of such benefits, which Defendants received, accepted and retained. Defendants owe Plaintiff and the Class members these sums that can be obtained directly from Defendants.

129.   Under principles of restitution, an entity that has been unjustly enriched at the expense of another by the retention of a benefit wrongfully obtained is required to make restitution to the other. In addition, under common law principles recognized in claims of common counts, assumpsit, unjust enrichment, restitution, and quasi-contract, under the circumstances alleged herein it would be inequitable for Defendants to retain such benefits without paying restitution or restitutionary damages. Such principles require Defendants to return such benefits when the retention of such benefits would unjustly enrich Defendants. They should not be permitted to retain the benefits conferred by Plaintiff and Class members via payments to them in relation to Mining Max. Other remedies and claims may not permit them to obtain such relief, leaving them without an adequate remedy at law.

COMPLAINT
Case No.:

130.   Plaintiff and the Class members seek appropriate monetary relief for such claims. In addition, pursuant to California Civil Code § 2224, "[o]ne who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." Based on the facts and circumstances alleged above, in order to prevent unjust enrichment and to prevent Defendants from taking advantage of its own wrongdoing, Plaintiff and the Classes are further entitled to the establishment of a constructive trust, in a sum certain of all monies charged and collected or retained by Defendants from which Plaintiff and Class members may seek restitution.

## COUNT VII

### VIOLATIONS OF CALIFORNIA SECURITIES LAW OF 1968

### (CAL. CORP. CODE § 25000, *et seq*.)

### (On Behalf of the California Subclass)

131.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

132.   Defendants violated California securities laws, specifically Cal. Corp. Code § 25000, *et seq.*, through their actions detailed above.

COMPLAINT
Case No.:

133.   As a result of the violation of this statute, Plaintiff and the Class lost money in investments that they otherwise would not have made had they known the truth.

134.   California law provides a private right of action for violation of this statute, as Plaintiff and the Class were those specifically intended to be protected by this statute, and Defendants' conduct falls within the exact public policy this statute intends to protect.

## COUNT VIII

## VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750, ET SEQ.

## (ON BEHALF OF THE CLASSES)

135.   Plaintiff hereby incorporates all paragraphs of Plaintiff's Class Action Complaint against Defendant as if fully set forth herein.

136.   This cause of action is brought pursuant to Civil Code § 1750, *et seq.*, the Consumers Legal Remedies Act ("CLRA"), on behalf of a Class as defined herein.

137.   Defendants are a "person" within the meaning of Cal. Civ. Code sections 1761(c) and 1770.

138.   Plaintiff and members of the proposed class are "consumers" within the meaning of Cal Civ. Code §§ 1761(d) and 1770.

139.   Defendant's investment products are "goods" or "services" as defined

34

by Cal. Civ. Code § 1761(a).

140.   Defendant violated the CLRA in at least the following respects:

(a)   In violation of § 1770(a)(4), using deceptive representations or designations of geographic origin in connection with goods or services as set forth above;

(b)   In violation of § 1770(a)(5), Defendant's investment product did not have "sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities" in that Defendant was not actually going to make the investments it promised and instead was a scheme to steal Plaintiff's money. Additionally, Defendants would invest Plaintiff's money and pay returns, plus bonus returns, depending on users' level of investment when Defendant's knew it did not and it was a scheme to steal Plaintiffs money;

(c) In violation of § 1770(a)(9), Defendant advertised goods or services with intent not to sell them as advertised by advertising the investment product as an investment service or product in that Defendants would invest Plaintiff's money and pay returns, plus bonus returns, depending on users' level of investment when Defendant's knew it did not and it was a scheme to steal Plaintiffs money;

(d) in violation of § 1770(a)(9), Defendant advertised goods or services with intent not to sell them as advertised by advertising that the "mining rigs," which were computer-like machines, would produce cashable, sellable, tradable cryptocurrency, when in fact they did not;

COMPLAINT
Case No.:

(e) In violation of § 1770(a)(14) by representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law, specifically that Defendants would invest Plaintiff's money and pay returns, plus bonus returns, depending on users' level of investment when Defendant's knew it did not and it was a scheme to steal Plaintiffs money;

(f) In violation of § 1770(a)(14), Defendant represented a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law, specifically that it had the right to access consumers' confidential credit or debit card information in order to update and charge the auto renew fees to their accounts;

(g) In violation of § 1770(a)(16), by representing that the subject of a transaction had been supplied in accordance with a previous representation when it had not, namely that the "mining rigs," which were computer-like machines, would produce cashable, sellable, tradable cryptocurrency, when in fact they did not;

(h)    In violation of § 1770(a)(19) by inserting an unconscionable provision in the contract; and

(h) for other such violations of the CLRA that discovery will uncover.

141.   Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights and Defendant was wanton and malicious in its concealment of the same.

142.   Plaintiff and the Class have suffered injury in fact and have lost money

36

COMPLAINT
Case No.:

as a result of Defendant's false representations and material omissions in the marketing and advertisement of these investment products.

143.   Defendant's unfair or unlawful acts, practices, representations, omissions, and courses of conduct, as described herein, were undertaken by Defendant in a transaction intended to result in, and which did result in, the sale or lease of goods or services to consumers.

144.   As a direct and proximate result of Defendant's violations of law, Plaintiff has been injured.

145.   Plaintiff intends to serve Defendant with a CLRA notification and demand letter via certified mail, return receipt requested.

146.    The notice letter will set forth the relevant facts and notifies each Defendant of its CLRA violations, and request that each Defendant promptly remedy those violations.

147.   Under the CLRA, a plaintiff may, without prior notification, file a complaint alleging violations of the CLRA that seeks injunctive relief only. Then, if the Defendant does not remedy the CLRA violations within 30 days of notification, the Plaintiff may amend her or his CLRA causes of action without leave of court to add claims for damages.

148.   Under the CLRA, Plaintiff is entitled to a permanent injunction prohibiting practices that violate the CLRA.

149.   Defendant's practices, acts and courses of conduct in connection with

COMPLAINT
Case No.:

the sale of its investment products, as described above, are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. As a result of Defendant's acts and practices as alleged in this Complaint, Plaintiff and the Class are entitled to injunctive relief prohibiting Defendant from continuing in the future the unlawful, unfair or fraudulent practice as described herein and all relief allowed for violation of the CLRA.

150. Plaintiff and the Class reasonably believed and/or depended on the material false and/or misleading information provided by, or omitted by, Defendant with respect to Defendant's unfair acts and deceptive practices.

151. By reason of the foregoing, Defendant's unlawful methods, acts, or practices as described herein have caused damage to Plaintiff and the Class Members, entitling them to injunctive relief.

152. Pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff, on behalf of Plaintiff's self and the Class, demand judgment against Defendant under the CLRA for injunctive relief only to enjoin the practices described herein.

153. Plaintiff, individually and as a member of the Class, has no adequate remedy at law for the future unlawful acts, methods, or practices as set forth above.

154. Pursuant to § 1780(d) of the CLRA, attached hereto as Exhibit E is the affidavit showing that this action has been commenced in the proper forum.

155. In bringing this action, Plaintiff has engaged the services of attorneys and has incurred reasonable legal expenses in an amount to be proved at trial.

COMPLAINT
Case No.:

156.   Plaintiff is also entitled to recover their attorneys' fees, costs, and expenses.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes pray for judgment as follows:

A.   For an order certifying the proposed class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff and his counsel to represent the proposed class, appointing counsel for Plaintiff as lead counsel for the respective class;

B.   An order awarding declaratory relief and temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.   Appropriate injunctive relief;

D.   Expressly disclaiming any and all damages pursuant to Cal. Civ. Code § 1750, *et. seq.*, that the Court enter judgment against Defendant for restitution, disgorgement, punitive damages, statutory damages, treble damages, and exemplary damages under applicable law, and compensatory damages for economic loss, diminished value, and out-of-pocket costs in an amount to be determined at trial;

E.   A declaration that Defendant is financially responsible for all Class notice and the administration of Class relief;

F.   An order awarding any applicable statutory and civil penalties;

G.     An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

H.     An award of costs, expenses, and attorneys' fees as permitted by law; and

I.     Such other or further relief as the Court may deem appropriate, just, and proper under the circumstances.

## IX.   DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

DATED: <u>May 25, 2018</u>          LAW OFFICE OF FRANCIS J. FLYNN, JR.

  <u>/s/ Francis J. Flynn, Jr.</u>
Francis J. Flynn, Jr.
6220 W. Third Street, #115
Los Angeles, California 90036
T: 314-662-2836
F: 1-855-710-7706
E: casey@lawofficeflynn.com

JONES WARD PLC
Jasper D. Ward IV (to seek admission Pro Hac Vice)
The Pointe
1205 E. Washington Street, Suite 111
Louisville, Kentucky 40206
T: (502) 882-6000
E: jasper@jonesward.com

JOHNSON FIRM
Christopher D. Jennings (to seek admission Pro Hac Vice)
2226 Cottondale Lane, Suite 210
Little Rock, Arkansas 72202
T: (501) 372-1300
F: (888) 505-0909
E: chris@yourattorney.com

40

COMPLAINT
Case No.:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ABIGALE RHODES GREEN INJURY LAW
Abigale Rhodes Green (to seek admission Pro Hac Vice)
1800 Kentucky Home Life Building
239 S. Fifth Street
Louisville, KY 40202
T: (502) 736-8159
F: (502) 736-8150
E: agreen@arglawfirm.com

**ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASSES**

COMPLAINT
Case No.: